PINE HILL CRYSTAL SPRING
WATER CO., Inc.

v.

UNITED STATES.

United States District Court
S. D. New York.
Feb. 25, 1954.

Jerome G. Futerman, New York City, for plaintiff.

J. Edward Lumbard, U. S. Atty. for Southern Dist. of N. Y., New York City, for defendant.

NOONAN, District Judge.

In this matter, the defendant has moved to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for lack of jurisdiction over the subject matter and/or on the ground that the complaint fails to state a claim upon which relief can be granted; the plaintiff has cross-moved for summary judgment pursuant to Rule 56. The basic fact situation involved is not in issue, but is sufficiently complex to require careful analysis.

On September 15, 1944, plaintiff's predecessor filed its Corporation Income and Excess Profits Tax returns for 1943, paying $18,572.07 in Excess Profits Tax; on November 15, 1946, the taxpayer was notified of a deficiency in its Excess Profits Tax of $5,802.09 and an overassessment of its Income Tax amounting to $3,492.18. The taxpayer applied the overassessment to the deficiency and paid the balance of $2,309.91 on April 4, 1947.

On March 15, 1948, the plaintiff filed a claim for refund of $21,936.74 as an overassessment of the 1943 Excess Profits Tax. This was computed by deducting from the total amount of Excess Profits Tax paid for the year 1943 ($24,-374.16) a post war credit of 10% ($2,-437.42). The basis of the claim for refund was a Board of Tax Appeals ruling in a similar case that the sale of water coolers held more than six months, which had previously been rented, constituted a gain from the sale of capital assets rather than ordinary income, since they had not been held primarily for sale. The effect of a recomputation on this basis, according to the taxpayer, was to completely eliminate the Excess Profits Tax paid for 1943.

On March 24, 1950, after auditing, the Bureau informed the taxpayer that the correct Excess Profits Tax liability was $15,152.46 and that the government would allow $9,221.70 as an overassessment.

On June 20, 1950 (by a Revenue Agent's Report dated March 24, 1950), the taxpayer was notified that, by virtue of the same facts that gave rise to a finding of a $9,221.70 overassessment of Excess Profits Tax, there was a $2,561.58 deficiency of Income Tax for 1943.

Further, the notice stated that the overassessment was "limited to overassessment of $5,802.09. Section 322(b) (2) (B) [26 U.S.C.A. § 322(b) (2) (B)]". That subsection of the Internal Revenue Code limits a refund to the amount paid within two years immediately preceding the filing of the claim where the claim was not filed within three years of the time the return was filed.

The return was filed on September, 15, 1944; no claim was filed by September 15, 1947. Therefore, the refund could not exceed the portion of the tax paid "during the two years immediately preceding the filing of the claim", or the amount paid between March 15, 1946 and March 15, 1948. The only transactions within that time limit were the application of the overassessment ($3,492.18) and the cash payment ($2,309.91) to pay the deficiency notice of 1946 for $5,802.-09. Therefore, by statute, the refund must be limited to $5,802.09.

On November 21, 1950, the taxpayer received a refund check for $2,341.66; and on December 7, 1950, it received a notice that the balance of the claim had

been disallowed. This suit was brought for an additional $3,499.93 plus interest and costs.

In arriving at the figure for which the refund check was sent, the government computed the matter as follows:

| | |
|---|---|
| Refund limit for Overassessment | $5,802.09 |
| Less: deficiency in Income Tax | 2,561.58 |
| | 3,240.51 |
| Less: interest on deficiency | 938.35 |
| | 2,302.16 |
| Plus: interest on overassessment | 39.50 |
| Balance: (refund check paid to taxpayer) | $2,341.66 |

For its part, the plaintiff in his complaint computed the amount owed on the following basis:

| | |
|---|---|
| Refund limit for overassessment | $5,802.09 |
| Plus: interest on overassessment | 39.50 |
| | 5,841.59 |
| Less: amount paid by refund check | 2,341.66 |
| Balance owing | $3,499.93 (plus interest and costs) |

The basic difference is that the government urges that the amount of the deficiency (plus interest) should be offset against the overpayment subject to refund whereas the plaintiff contends that any deficiency either is barred by the applicable statute of limitations, Sec. 275(a), 26 U.S.C.A. § 275(a), or if not so barred, should be set off against the gross Excess Profits Tax overassessment less the post-war credit of 10% as follows:

| | |
|---|---|
| Excess profits tax overassessment | $9,221.70 |
| Less: post-war credit | 922.17 |
| | 8,299.53 |
| Less: deficiency in Income Tax | 2,561.58 |
| Net overassessment | 5,737.95 |
| Less: Amount previously refunded | 2,341.66 |
| Balance owed to taxpayer | $3,396.29 plus adjustment for interest |

By virtue of 26 U.S.C. § 3807(b) (subsequent repeal not applicable), which reopened the statute of limitations as to the deficiency, the only real issue is the construction to be given that subsection.

The plaintiff argues that Section 3807 (Internal Revenue Code) operates to reopen the statute of limitations with respect to a barred deficiency (or a barred refund where the initial determination was of a deficiency) *only* by way of an offset or recoupment against the overpayment (or deficiency); hence, in this matter, the entire overpayment should be taken into account along with the entire deficiency to determine the net over-

payment subject to refund. Once the net overpayment is determined, the plaintiff urges that the limitation provided by Sec. 322(b) should be applied to this net overpayment rather than the gross overpayment.

On this precise issue, neither party has been able to supply convincing precedent, nor has the Court been able to locate any. Accordingly, we must rely on an examination of subsection 3807(b) as a whole, logic and equity to determine the proper interpretation to be given to that subsection.

It is clear that Sec. 3807 (Internal Revenue Code) was enacted in order to permit an adjustment otherwise outlawed by the statute of limitations but made necessary by some change in a related tax. Thus, in the instant case, the elimination of $10,246.33 from excess profits net income (as representing capital gain instead of ordinary income as originally reported), resulted in an overpayment which was refundable within the statute of limitations properly applicable thereto. This determination under chapter 2 meant that the taxpayer was entitled to a correspondingly smaller credit under Sec. 26(e) for adjusted excess profits net income in computing the Income Tax under Chapter 1, resulting in a deficiency in the Income Tax. Since this deficiency would otherwise be barred by the statute of limitations, the intended equalization between adjusted excess profits net income subject to the Excess Profits Tax and adjusted excess profits net income allowed as a credit, reducing the Income Tax, would have been upset by allowance of the overpayment in Excess Profits Tax without the corresponding adjustment in the Income Tax. The adjustment was made by the Commissioner of Internal Revenue under the auspices of Sec. 3807 which gave him an extra year in which to make it. But it is only the fact of the determination of the Excess Profits Tax overpayment which brings Section 3807 into play.

The purpose and intent are clear, to provide the Commissioner with an opportunity to make proper set-off and recoupment of the deficiency which is related to the overpayment determined in the taxpayer's favor in respect of the other tax.

The government's method of computation is based on the premise that the deficiency is independent of the overpayment. It first limits the overpayment of $9,221.70 to the amount refundable under the statute of limitations ($5,802.09) and then applies the deficiency as an independent assessable amount against the refundable $5,802.09, instead of first applying the deficiency against the actual overpayment and then applying the statute of limitations on refunds to the net overpayment.

The government would thus ignore the fact that this deficiency is barred in the first place, that Sec. 3807 revives it only by reason of the fact that an overpayment has been determined in respect to the related Excess Profits Tax, and that Sec. 3807 was obviously designed to restore the balance between the Income Tax and the Excess Profits Tax when upset by disparate statutes of limitation.

The balance between the Income Tax and the Excess Profits Tax in this particular instance is this: The "adjusted excess-profits net income" which is subject to Excess Profits Tax under Sec. 26(e) is the self-same "adjusted excess-profits net income" which is allowed as a credit for Income Tax purposes—so that any reduction in the first means a corresponding reduction in the credit for Income Tax purposes. In the instant case, the government has reduced "adjusted excess-profits net income" by the $10,246.33 eliminated from excess profits net income as representing capital gain. This results in an Income Tax deficiency of $2,561.58 under Sec. 26(e). But the elimination of $10,246.33 from "adjusted excess-profits net income" results in an overpayment of $9,221.70 in the related Excess Profits Tax. That is the balance between the two taxes. In applying the Income Tax deficiency against only the $5,802.09 of the Excess Profits Tax overpayment, which is

refundable, the government distorts the statutory balance.

■ To impute such a motive to Congress in enacting Sec. 3807 contravenes a cardinal principle of statutory construction: Statutes are to be construed so as to avoid an unreasonable result.

■ When a taxpayer applies for a refund, it expressly or impliedly authorizes the Bureau to audit the entire return; in no event, may the taxpayer recover more than its overpayment—determined by comparison between the amount due and the amount actually paid. This much is clear.

The amount actually due for 1943 was determined by the Revenue Agent's Report dated March 24, 1950. That report set out both the $9,221.70 overassessment and the $2,561.58 deficiency.

The maximum possible refund for any overassessment is statutorily fixed in this case at $5,802.09. If this figure were not set, there would be no question as to the method of treatment of the deficiency; it would be deducted from the overassessment, and a refund check would be made out for the balance. The mere fixing of a maximum refund ought not to further lower the amount refundable for overpayment.

■■ In determining the corrected amount of taxes (Excess Profits and Income) that should have been paid by the taxpayer for the year 1943, both the overassessment and the deficiency were affected by the same basic facts. Accordingly, the equitable method of computing the amount to be refunded would be to subtract the deficiency from the overassessment and refund the balance (limited, of course, by the interest involved), except that the total amount of the refund with interest cannot exceed the statutory maximum of $5,802.09 less the amount already refunded.

The defendant's motion to dismiss the complaint for lack of jurisdiction over the subject matter is denied on the ground that the action arises under the laws of the United States (Internal Revenue Code); the motion to dismiss for failure to state a claim upon which relief can be granted is denied by virtue of the conclusion reached as to the merits.

As to the plaintiff's motion for summary judgment, this Court finds that there is no genuine issue as to any material fact and that the plaintiff is entitled to judgment as a matter of law to the extent indicated above and formulated below.

The plaintiff is entitled to judgment for the amount of $9,221.70 overassessment plus interest and costs less the following items:

1. the post-war credit;
2. the income tax deficiency;
3. interest on (2);
4. the amount of refund already paid by the defendant.

Settle order.