AMBASSADOR HOTEL COMPANY OF LOS ANGELES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61486. Filed April 24, 1959.

*John E. Hughes, Esq.*, for the petitioner.
*J. E. Roberts, Esq.*, for the respondent.

PIERCE, *Judge:* The respondent determined a deficiency of $33,-290.61 in the income tax of the petitioner, Ambassador Hotel Company of Los Angeles, for its taxable year ended January 31, 1944.

Said deficiency is based on the increase in petitioner's income tax as previously returned and determined, which increase resulted, by operation of the applicable statutes, from the adjustment of petitioner's related excess profits tax for the same taxable year in accordance with a previous opinion and final decision of this Court. The deficiency and the basis thereof are explained in the notice of deficiency herein, in part as follows:

The deficiency of income tax shown above is based upon the computation of income tax liability taking into consideration the adjustment to related excess profits tax wherein the total excess profits credit and unused excess profits credit claimed on the excess profits tax return was increased by the amount of

$83,226.54 as shown herein. Due to the relationship of income tax and excess profits tax computations, increase in the excess profits credits automatically produces an increase in income tax.

The related excess profits tax for the taxable year ended January 31, 1944 was based upon the redetermination made in accordance with the opinion of The Tax Court of the United States filed October 29, 1954 for decision under Rule 50 in Docket No. 33123 and the final order of the Court entered on April 12, 1955 with respect to the Rule 50 recomputation.

\* \* \* \* \* \* \*

It is determined that the deficiency of income tax in the amount of $33,290.61 is assessable under the provisions of section 3807 of the Internal Revenue Code of 1939 (relating to period of limitations in cases of related taxes under Chapter 1 and Chapter 2).

Neither the amount of said deficiency, nor any of the Commissioner's determinations respecting the adjustments and computations on which the same is based, have been challenged or disputed by the petitioner. The sole issue for decision, as raised by the pleadings, is whether assessment of the deficiency is prevented or barred by limitation, under the applicable provisions of the Internal Revenue Code of 1939.

The facts of the case have been established, by certain evidence adduced herein by the respondent; by certain admissions of the parties in the pleadings; and by this Court's taking judicial notice, pursuant to requests made by the respondent at the trial herein, of its own opinion and final decision in a prior interrelated case (hereinafter more specifically identified), wherein refund of an overpayment in petitioner's related excess profits tax liability for the same taxable year was allowed.

The petitioner presented no evidence at the trial, but filed a motion for judgment on the pleadings, that assessment and collection of the deficiency is barred by limitation under the Code. The Court withheld its ruling on this motion, pending the filing of its opinion herein.

### FINDINGS OF FACT.

Petitioner is a corporation, with principal office in Los Angeles, California. Its return for the taxable year involved was filed with the collector of internal revenue for the sixth district of California.

On April 12, 1955, this Court entered its final decision in an interrelated case of the present petitioner, entitled *Ambassador Hotel Company of Los Angeles, Petitioner,* v. *Commissioner of Internal Revenue, Respondent,* Docket No. 33123, which involved among other things the amount of petitioner's related excess profits tax liability for the same taxable year here involved. In said decision, refund of an overpayment in petitioner's excess profits tax for said taxable year was allowed, within the period of limitations properly applicable thereto, in accordance with the provisions of section 322(d) of the 1939 Code. The decision, so far as is here material, reads as follows:

THE TAX COURT OF THE UNITED STATES

Washington

AMBASSADOR HOTEL COMPANY OF LOS ANGELES, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket No. 33123

DECISION

The parties filed an agreed computation on March 29, 1955, pursuant to the Court's Opinion filed October 29, 1954. Therefore, it is

ORDERED AND DECIDED: That for the fiscal year ended January 31, 1944 * * * there is an overpayment in excess profits tax in the amount of $26,475.54, which amount was paid within three years before the filing of the claim, which claim was filed within three years from the time the return was filed; * * *

(Signed) J. E. MURDOCK
Judge.

Entered April 12, 1955

The decision, as shown on its face, was based on the opinion of this Court in the above-mentioned case (filed October 29, 1954, and reported at 23 T.C. 163), in which one of the issues pertained to the amount of excess profits credit allowable to the petitioner in computing its excess profits tax. The refund of overpayment allowed in said decision resulted from application of the authorized excess profits tax rates to a revised amount of "adjusted excess profits net income," which was less than that previously returned and determined. The above-mentioned excess profits tax case, unlike the instant case, did not involve the amount of petitioner's related income tax liability for the same year, in respect of which no deficiency had at that time been determined.

On December 29, 1955, which was less than 1 year after the entry of this Court's above-mentioned final decision of April 12, 1955, the Commissioner mailed to the petitioner the statutory notice of deficiency herein. Attached to said notice of deficiency, and specifically referred to therein, is a statement which sets forth the facts, figures and computations that were the bases for the Commissioner's determinations: (1) That the application of the law or facts determined in the ascertainment of the above-mentioned overpayment of petitioner's excess profits tax, resulted in an increase in the amount of petitioner's related income tax for the same taxable year, as previously returned and determined; (2) that the amount of such increase in income tax is equal to the amount of the deficiency determined herein; and (3) that said deficiency is assessable under the provisions of section 3807 of the 1939 Code.

Petitioner's income tax return for the taxable year here involved was filed on April 14, 1944. Except by operation of the provisions

of section 3807 of the 1939 Code (and certain other sections of the Code mentioned in said section 3807, which are not here pertinent), the assessment of a deficiency in petitioner's income tax for said taxable year would, on the date that the notice of deficiency herein was mailed to petitioner, have been prevented or barred by limitation.

Assessment of the deficiency herein is not prevented or barred by limitation.

### OPINION.

The sole issue raised by the pleadings, as above stated, is whether the Commissioner is prevented or barred by limitation, from assessing the deficiency which he determined in petitioner's income tax for the taxable year here involved. This deficiency in income tax resulted by operation of law, from the adjustment of petitioner's related excess profits tax for the same taxable year in accordance with a final decision of this Court.

### *I.*

Excess profits taxes of corporations for the taxable year here involved were imposed under the provisions of subchapter E of chapter 2 of the Internal Revenue Code of 1939—which provisions are commonly called the World War II Excess Profits Tax Act;[1] whereas, the income taxes of corporations for the same period, were imposed under chapter 1 of said Code. These two taxes, imposed under chapter 1 and chapter 2, respectively, are related taxes, by reason of the so-called "two basket" approach which is followed in computing them. In general, the scheme of such approach is this: The computation of both taxes starts initially with the corporation's normal-tax net income. Thereafter, in computing the excess profits tax, various adjustments including a specific exemption and an excess profits credit are provided, to arrive at the "adjusted excess profits net income" on which the excess profits tax is based. And then, in computing the income tax of the corporation, a credit is allowed under section 26(e) of the 1939 Code, which so far as here material is equal to the amount of the above-

---

[1] Subchapter E of chapter 2 of the 1939 Code was added to the Code by the Second Revenue Act of 1940, effective for taxable years beginning after December 31, 1939; and was thereafter retroactively amended. Although these provisions were repealed by section 122(a) of the Revenue Act of 1945, effective as to taxable years beginning after December 31, 1945, they continue to remain in force for those taxable years to which they applied. Section 122(b) of the Revenue Act of 1945 provides:

"the provisions of subchapter E of chapter 2 shall remain in force for the purposes of the determination of the taxes imposed by such subchapter for taxable years beginning before January 1, 1946 * * * as if subsection (a) [the repealing provisions] had not been enacted."

See also, in this regard, H. Rept. No. 1106, 79th Cong., 1st Sess., p. 19 (1945 C. B. 595, 609).

mentioned "adjusted excess profits net income." By reason of such interrelationship between the income tax and the excess profits tax for years to which the World War II Excess Profits Tax Act is applicable, it follows as a matter of law that if the amount of the "adjusted excess profits net income" is reduced, the result will be, not only that the amount of the excess profits tax will be decreased, but also that (because of operation of the above-mentioned cross credit allowed under section 26(e)) the amount of the related income tax for the same taxable year will be increased. And conversely, if the amount of the "adjusted excess profits net income" is increased, the result will be, not only that the amount of the excess profits tax will be increased, but also that the amount of the related income tax for the same taxable year will be decreased.

In the instant case, petitioner's excess profits tax for the year involved was decreased, in accordance with the final decision of this Court entered on April 12, 1955. This decrease in excess profits tax necessarily reflected a downward adjustment in the amount of the "adjusted excess profits net income" on which such tax was based. And such downward adjustment of the "adjusted excess profits net income" operated under the statute to reduce the amount of the above-mentioned cross credit provided by section 26(e), and thereby to increase the amount of petitioner's income tax for the same taxable year.

The Commissioner, in his notice of deficiency herein, determined the amount of the resulting deficiency in petitioner's income tax; and he also determined and set forth the specific adjustments and computations with respect to both the chapter 1 and the chapter 2 taxes, which produced such deficiency. These determinations of the Commissioner are prima facie correct. And, since the petitioner assigned no error with respect to said determinations, and produced no evidence tending to show them to be erroneous, they must be approved—subject only to our consideration of the sole question raised by petitioner in its pleadings, as to whether assessment of said deficiency is barred by limitation.

## II.

As regards the period for assessment of the deficiency here involved, the Commissioner stated in his notice of deficiency:

It is determined that the deficiency of income tax in the amount of $33,290.61 is assessable under the provisions of section 3807 of the Internal Revenue Code of 1939 (relating to period of limitations in cases of related taxes under Chapter 1 and Chapter 2).

We think this determination of the Commissioner is correct.

The purpose of section 3807,[2] as shown by its terms, is to give effect to the above-mentioned two basket approach of the World War II Excess Profits Tax Act, in situations like the present—where one of the related chapter 1 and chapter 2 taxes is adjusted at a time when the correlative adjustment to the other related tax would be prevented "by the operation * * * of any law or rule of law other than this section" (and also other than certain mitigation and compromise provisions mentioned in section 3807, which are not here pertinent). Its effect in such situation is, in substance and so far as is here material, to provide an independent and special 1-year period of limitation, applicable only in the case of related taxes under chapter 1 and chapter 2. This special 1-year period of limitation differs from the general 3-year period of limitation provided by section 275 of the 1939 Code, in that: (1) The general period of limitation under section 275 begins with the

---

[2] Section 3807 was added to the 1939 Code by section 513 of the Revenue Act of 1943; and it was, by subparagraph (b) thereof, made applicable to taxable years beginning after December 31, 1939. Insofar as here material, it provides:

Sec. 3807. PERIOD OF LIMITATIONS IN CASE OF RELATED TAXES UNDER CHAPTER 1 AND CHAPTER 2.

(a) DEFINITIONS.—As used in this section—

(1) The term "tax previously determined" shall have the meaning assigned to such term by section 3801(d).

(2) The term "the same taxable year" shall include any taxable year which coincides in whole or in part with the taxable year for which the determination referred to in subsection (b) is made.

(b) EXTENSION OF PERIOD OF LIMITATIONS.—If—

(1) under a determination in respect of a tax imposed by Chapter 1 or Chapter 2, a deficiency is assessed or a credit or refund of an overpayment is allowed, within the period of limitations properly applicable thereto, and

(2) the application of the law or facts determined in the ascertainment of such deficiency or overpayment to any other such tax of the taxpayer under Chapter 1 or Chapter 2 for the same taxable year would result in an increase or decrease in the amount of the tax previously determined in respect of such other tax, and

(3) on any date prior to the expiration of one year from the assessment of a deficiency or the allowance of a credit or refund in respect of the tax referred to in paragraph (1), the assessment of a deficiency or the allowance of a credit or refund in respect of the tax referred to in paragraph (2) is prevented (except for the provisions of section 3801 or 734) by the operation (whether before, on, or after the date of enactment of the Revenue Act of 1943) of any law or rule of law other than this section and other than section 3761 (relating to compromises),

then upon such date the increase or decrease in the tax referred to in paragraph (2) shall be considered a deficiency or an overpayment, as the case may be. Such deficiency may be assessed and collected or such overpayment may be credited or refunded as if on the date the deficiency is assessed or credit or refund allowed in respect of the tax referred to in paragraph (1) one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund in respect of the tax referred to in paragraph (2) for the same taxable year.

(c) ADJUSTMENT UNAFFECTED BY OTHER ITEMS, ETC.—In determining whether an increase or decrease in the amount of the tax previously determined shall be considered to result from the application of the law or facts under a determination referred to in subsection (b)(1), changes shall be made in items which are the subject of such determination and in items which are affected thereby, and in no others. The amount which may be assessed or allowed as a credit or refund under subsection (b) shall not be diminished by any credit or set-off based upon any item which was not the subject of such determination or affected thereby. Such amount, if paid, shall not be recovered by a claim or suit for refund or suit for erroneous refund based upon any item which was not the subject of such determination or affected thereby, except in connection with a subsequent application of this section.

date on which the return was due to be filed, whereas said special 1-year period of limitation applicable to related taxes begins with the date on which the adjustment to the excess profits tax liability was made, notwithstanding that the general period of limitation had expired; and (2) that during the general period of limitation any item of income or any deduction may be adjusted, whereas during the special 1-year period of limitation the only adjustments which may be made to the related tax are those which result from adjustments theretofore made to the other interrelated tax. See sec. 3807(c). Also, the general period of limitation under section 275 is contained in a different chapter of the Code; and neither section 275 nor section 3807 makes any reference to the other (as is done in the case of section 275 and section 276, wherein the latter provides "exceptions" to the other).

Section 3807 prescribes three prerequisites to its application, all of which have here been met. These prerequisites may be summarized, so far as here material, as follows:

*First.*—Under a determination in respect of the excess profits tax of petitioner imposed by chapter 2 of the Code, a refund of overpayment must have been allowed, within the period of limitations properly applicable thereto. Here, such refund of an overpayment was allowed by this Court in its above-mentioned final decision of April 12, 1955, within the applicable period of limitations, in accordance with the provisions of section 322(d) of the Code. Moreover, the Commissioner gave effect to said decision in his determinations and computations, as set forth in the notice of deficiency herein; and these determinations have been approved by us, in the absence of any assignment of error by petitioner respecting the same, or any attempt of petitioner to establish that they are erroneous.

*Second.*—Application of the law or facts determined in the ascertainment of the above-mentioned overpayment in excess profits tax, to the related income tax of petitioner imposed under chapter 1 of the Code for the same taxable year, must result in an increase in such income tax as previously determined. Here, the Commissioner determined in his notice of deficiency, and showed precisely by computations set forth therein, that such increase in petitioner's related income tax for the same year, as previously returned and determined, did result. Moreover, we here take judicial notice of the terms and method of operation of the statutes involved; and find, not only that the Commissioner's application of said statutes is correct, but also that by operation of such statutes an increase in petitioner's related income tax resulted.

*Third.*—On the date that the notice of deficiency herein was mailed to the petitioner, assessment of a deficiency in respect of petitioner's income tax must have been prevented "by the operation * * * of any

law or rule of law," other than section 3807 (and also other than certain mitigation and compromise provisions of the statute, which are not here relevant). Here, the petitioner alleged in its pleadings (and has in effect conceded both in said pleadings and on brief) that the general period of limitation (under section 275 of the Code) for assessing a deficiency in its income tax for such year, had expired. And if, under any construction of said pleading, it may be concluded that petitioner has not pleaded and conceded that the general period of limitation has expired, then its whole defense falls—for in the absence of an adequate plea that the general statute of limitation has expired, the timeliness of the deficiency here involved (even under the general period of limitation and without application of section 3807) would stand unchallenged, and would have to be approved.

The Commissioner, acting in accordance with section 3807, mailed the notice of deficiency herein to the petitioner, within said special 1-year period following the allowance of the refund of overpayment in respect of petitioner's excess profits tax for the same taxable year. As provided in subsection (b) of said statute, the resulting increase in the related income tax is to "be considered a deficiency,"[3] which may be assessed and collected "as if" on the date when the refund of excess profits tax was allowed, 1 year remained before the expiration of the general period of limitation provided by section 275. And upon the mailing of said notice of deficiency, followed by the timely filing of the petitioner's petition herein, the running of the period of limitation was suspended under the provisions of section 277.

We hold that assessment of the deficiency here involved is not prevented or barred by limitation. *Morrisdale Coal Mining Co.*, 21 T.C. 393.

### III.

In making our foregoing Findings of Fact, conclusions and holdings, we have taken judicial notice of the applicable statutes and the manner in which they operate; and also of our own opinion and decision in the above-mentioned related case of the petitioner, under which the refund of an overpayment in respect of its excess profits tax for the same taxable year was allowed. We have done this in

---

[3] The term "deficiency" is defined in section 271 of the 1939 Code, as follows:

SEC. 271. DEFINITION OF DEFICIENCY.

(a) IN GENERAL.—As used in this chapter in respect of a tax imposed by this chapter, "deficiency" means the amount by which the tax imposed by this chapter exceeds the excess of—

(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over

(2) the amount of rebates, as defined in subsection (b)(2), made.

accordance with requests made by the respondent at the trial,[4] and also in accordance with settled authority as to the power and duty of a court to take judicial notice of statutes and its own acts (as distinguished from testimony and other evidence) in an interrelated case involving the same parties.

In *Freshman* v. *Atkins*, 269 U.S. 121, 124, the Supreme Court, after noting that one court is not bound to search the records of other courts and give effect to their judgments, said: "This is far from saying that the court may not take judicial notice of, and give effect to, its own records in another but interrelated proceeding."

Likewise, in *Booth* v. *Fletcher*, 101 F. 2d 676, certiorari denied 307 U.S. 628, the Court of Appeals for the District of Columbia held on the basis of its own records, that it had judicial knowledge of the fact that a prior appeal from an order of disbarment had been taken to it by the same appellee; and, in accordance with numerous cited authorities, it took judicial notice of its opinion in such prior appeal, and of a certain conclusion which it had expressed in that opinion.

Also, the Court of Appeals for the Ninth Circuit (which presumably is the court to which any appeal from the decision herein would be taken) has given effect to the same principle, respecting a court's taking of judicial notice of its own actions in a prior interrelated proceeding. *Latta* v. *Western Inv. Co.*, 173 F. 2d 99, 103; and *Lowe* v. *McDonald*, 221 F. 2d 228, 230–231.

See also 9 Wigmore, Evidence secs. 2571, 2579 (3d ed., 1940).[5]

After applying the foregoing principles, and after taking judicial notice of the manner in which the applicable statutes operate, and of our opinion and decision in the prior interrelated excess profits tax case, we conclude (contrary to petitioner's contention) that no additional pleadings or evidence are necessary to our disposition of the issue before us. The notice of deficiency herein was sufficient to provide petitioner with ample notice that the deficiency is based on adjustments resulting from the interrelationship of chapter 1 and chapter 2 taxes; and it was sufficient also to provide ample notice that the Commissioner intended to assess such deficiency through application of the provisions of section 3807, which operates specifically, and only, in the case of related taxes under chapter 1 and chapter 2. Accordingly, when petitioner pleaded merely the running of the general 3-year

---

[4] Counsel for petitioner stated at the trial that he had no objection to the Court's taking judicial notice of its above-mentioned decision.

[5] It is significant also to observe in this connection, that the Uniform Rules of Evidence (set forth in 4 Jones, Evidence, pp. 1889, 1900 (5th ed., 1958)), which were drafted and approved by the National Conference of Commissioners on Uniform State Laws, and were approved by the American Bar Association and the American Law Institute, provide in Rule 9 thereof that judicial notice of statutes *shall* be taken without request by a party; and that judicial notice *may* be taken without request of a party, and *shall* be taken if requested by a party, of various other matters including "specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy."

period of limitation under section 275, it failed to plead any adequate defense, either to the amount of the deficiency or to the application of section 3807. Indeed the only effect of its plea was to concede that one of the prerequisites to application of the latter section had been met.

As we have heretofore shown, section 3807 is an independent and special statute of limitations, which is applicable only for the purpose of making adjustments to one related tax, that result from adjustments to another related tax. It is contained in a different chapter of the Code than is section 275; and it is not related to section 275, by any cross reference between the two. It does not depend at all upon the general 3-year period of limitation having been kept continuously open, for adjustment of *all* items of income and *all* deductions; and its starting point is not the due date of the return. As shown by its terms, it was intended to be operative in situations where a deficiency or refund in respect of the second related tax would be "prevented * * * by the operation * * * of any law or rule of law other than this section." Therefore, a plea that assessment of the deficiency is prevented by some "law or rule of law other than this section," is not responsive, in a case like the present which involves "related taxes under Chapter 1 and Chapter 2"; and such a plea is not sufficient to provide a defense to the deficiency, either prima facie or otherwise.[6]

## *IV.*

Finally, the petitioner has presented on brief, a defense not raised by its pleadings—to the effect that section 3807 may not be applied in the instant case, on the ground that said section was repealed "outright * * * without qualification or saving" by section 304 of the Excess Profits Tax Act of 1950. In view of the absence of proper foundation in the pleadings, and the failure of petitioner to give notice of such defense to the Court and the respondent prior to the trial herein, that issue is not properly before us. Moreover, the point is entirely without merit.

In 1950, Congress enacted and added to the 1939 Code, as subchapter D of chapter 1, the Excess Profits Tax Act of 1950 which is commonly called the Korean War Excess Profits Tax Act. This Act, which was effective for taxable years ending after June 30, 1950, did not employ the above-mentioned two-basket approach of the prior World War II Act; and it was, in reality, an additional income tax. By reason of such changed approach, both the above-mentioned cross credit under section 26(e), and also the special 1-year period of limitation, provided by section 3807 for cases involving related taxes under

---

[6] The situation presented by petitioner's plea may be likened to one where a 2-year period of limitation applicable to an action for damages for personal injuries, is pleaded as a defense to an action for the recovery of lands, in respect of which a 20-year period of limitation has been provided.

chapter 1 and chapter 2, were unnecessary to the operation of the new Act. S. Rept. No. 2679, 81st Cong., 2d Sess., p. 5 (1951–1 C.B. 242–243).

In this situation, Congress, in the same Act which added to the Code the new Excess Profits Tax Act of 1950, made certain technical changes and modifications in various provisions of the Code—so that these provisions, which were still necessary for the disposition of pending cases controlled by the prior World War II Act, would not interfere with the operation of the new Act. These changes and modifications, together with a savings clause specifying their effective date, were embodied in section 304 of the Excess Profits Tax Act of 1950, under the heading "Technical Amendments." So far as here material, said section reads as follows:

SEC. 304. TECHNICAL AMENDMENTS.

(c) Section 3807 of such Code (relating to period of limitations in case of related taxes under Chapter 1 and Chapter 2) is repealed.

\* \* \* \* \* \* \*

(g) The amendments made by this section shall be applicable with respect to taxable years ending after June 30, 1950.

Petitioner's contention is in substance, that because the change or modification contained in the above-quoted subsection (c), is designated as a "repeal" of one of the sections of the 1939 Code which continued in force, the term "amendments" as used in subsection (g) is inept and insufficient to make such change or modification effective only for taxable years ending after June 30, 1950. Thus, under petitioner's contention, the two-basket approach would be eliminated in the disposition of all pending cases involving the World War II Act years—notwithstanding the scheme of taxation for those years, and the fact that cases of other taxpayers which were settled promptly, were subjected to the operation of the two-basket approach. Also under a consistent application of petitioner's contention, not only would the Commissioner be precluded from assessing a deficiency like the present, which is based on an excess profits tax adjustment that was favorable to the petitioner; but also any taxpayer whose excess profits tax is adjusted in a manner unfavorable to it, would be precluded from obtaining the benefit of a reduction in its related income tax, under section 3807. We are unwilling, in the absence of any supporting authority, to attribute to Congress an intention to effect such illogical and inequitable results.

Moreover, there are several indications that the intention of Congress was that all of the "technical amendments" specified in section 304, were intended to be embraced within the subsection (g) savings clause. In addition to the above-mentioned purpose of the changes, and the fact that all the specified changes and modifications are simi-

larly entitled "Technical *Amendments*," which conforms with the term "amendments" used in the savings clause, there is ample precedent for the practice of using the term "amendment" in referring to the cancellation or "repeal" of a single integral part of an entire and continuing instrument, as distinguished from the complete repeal of the instrument itself. The most outstanding example of such practice is to be found in the Constitution of the United States, wherein the article which "repealed" the 18th amendment is designated as the 21st *amendment* to the Constitution. Also in the recent Technical Amendments Act of 1958, section 3 thereof provides in subsection (*a*) that section 120 of the 1954 Code "is hereby repealed"; and it then states in subsection (c) thereof, that the "*amendments* made by subsection (*a*) and (b) shall apply with respect to taxable years ending after September 30, 1958." (Emphasis supplied.) Likewise, section 83 of the Technical Amendments Act of 1958 provides in subsection (d) thereof, for the effective date of the "amendments" to the 1954 Code made by preceding "subsections (a), (b) and (c);" and one of these preceding subsections, subsection (c), provided for the "repeal" of section 6611 of the 1954 Code.

Still another example of such practice is to be found in the report of the Ways and Means Committee of the House of Representatives on the Revenue Act of 1950; and this example is particularly significant, because it reveals the practice of the same Congress which enacted section 304, which is here involved. In commenting on section 205 of the bill, the committee stated in part: "Subsection (g) of this section of the bill *repeals* section 115(m) of the Code"; and then, in the following paragraph of the report, it further stated: "The *amendments* made by *all of the above subsections*, * * * are applicable to taxable years ending after December 31, 1949." (Emphasis supplied.) H. Rept. No. 2319, 81st Cong., 2d Sess., (1950–2 C.B. 442).

Webster's New International Dictionary (2d ed. 1958), page 83, defines the term "amend," in part:

5. * * * to change or *alter in any way*, esp. in phraseology; * * *

6. Specif. in parliamentary procedure, to alter (as a bill or resolution) formally by some addition, *taking away*, or modification; * * * [Emphasis supplied.]

Also, Webster defines the term "amendment," in part:

2. In parliamentary procedure, *any alteration* made or proposed to be made in a bill or motion by adding, changing, substituting, or *omitting*. [Emphasis supplied.]

In recognition of the well-settled principle of statutory construction that, where nothing to the contrary appears, statutory words are to be given the meaning commonly attributed to them, we regard

220

it to be significant that authors of textbooks on Federal taxation and publishers of Federal tax services have uniformly, so far as has come to our attention, attributed to the provisions of the above-mentioned section 304, the meaning that the repeal of section 3807 was effective only for taxable years ending after June 30, 1950. See 10 Mertens, Law of Federal Income Taxation, p. 128 (1958); 3 P.-H., 1958 Fed. Tax Serv. par. 19,775; 5 C.C.H. 1958 Fed. Tax Rep. par. 5460; historical note regarding section 3807, contained in 26 United States Code Annotated, I.R.C. 1939, as amended, p. 992.

Moreover, this Court and others have, subsequent to the enactment of said section 304, continued to give effect to section 3807 (without any question being raised as to its continued vitality), in cases involving the World War II Excess Profits Tax Act years. See *Morrisdale Coal Mining Co., supra,* (1953 opinion of this Court); *Morrisdale Coal Mining Co.* v. *United States,* 142 F. Supp. 930 (Ct. Cl. 1956); *Pine Hill Crystal Spring Water Co.* v. *United States,* 121 F. Supp. 480 (S.D.N.Y., 1954).

We reject the above-mentioned contention of the petitioner.

---

Petitioner's motion for judgment on the pleadings has been denied.

We hereby approve the deficiency here involved; and hold that assessment and collection of the same is not prevented or barred by limitation.

*Decision will be entered for the respondent.*