POLAROID CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65983.    Filed November 23, 1959.

*Isaac M. Barnett, Esq.,* for the petitioner.
*James E. Markham, Jr., Esq.,* for the respondent.

OPINION.

OPPER, *Judge:* The issues in this case are essentially questions of statutory construction. Respondent does not dispute the facts produced by petitioner.

The income [1] which petitioner contends is abnormal under section 456, I.R.C. 1939,[2] was earned by the sale of tangible property which arose out of research and development [3] extending over a period of more than 12 months.  Respondent's regulations [4] provide that such income is not abnormal and may not constitute a class of income under section 456.  This provision in respondent's regulations is squarely in accord with congressional intent as manifested by the legislative history of section 456.

Basically, the Korean War excess profits tax was patterned after the World War II excess profits tax.  There was, however, a general attempt to simplify the administration of the tax and to eliminate potential inequities.  The World War II tax described one class of abnormal income as follows:

[1] The parties have drawn no distinction between the income earned from the sales of the Polaroid Land equipment and that earned from the sales of the stereo products. Accordingly, we treat them as being similar in nature for purposes of this issue.

[2] SEC. 456.  ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section—

(1) ABNORMAL INCOME.—The term "abnormal income" means income of any class described in paragraph (2) includible in the gross income of the taxpayer for any taxable year under this subchapter if * * * the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 115 per centum of the average amount of the gross income of the same class for the four previous taxable years * * *

(2) SEPARATE CLASSES OF INCOME.—Each of the following subparagraphs shall be held to describe a separate class of income:

(A) Income arising out of a claim, award, judgment, or decree, or interest on any of the foregoing; or

(B) Income resulting from exploration, discovery, or prospecting, or any combination of the foregoing, extending over a period of more than 12 months; or

(C) Income from the sale of patents, formulae, or processes, or any combination of the foregoing, developed over a period of more than 12 months; or

(D) Income includible in gross income for the taxable year rather than for a different taxable year by reason of a change in the taxpayer's method of accounting.

All the income which is classifiable in more than one of such subparagraphs shall be classified under the one which the taxpayer irrevocably elects.  The classification of income of any class not described in subparagraphs (A) to (D), inclusive, shall be subject to regulations prescribed by the Secretary.

[3] Petitioner cannot and does not deny this, but insists that the "tangible" properties would have been valueless except for the process they embodied.  This seems to us irrelevant.

[4] Regs. 130.  Sec. 40.456–2.  [As amended by T.D. 6026, 1953–2 C.B. 235, 236]

Classification of income. * * *

(b) Other income, not within a class described in subparagraphs (A)–(D) of section 456(a)(2), to which section 456 is applicable may be grouped by the taxpayer, subject to approval by the Commissioner on the examination of the taxpayer's return, in such classes similar to those specified in subparagraphs (A)–(D) of section 456(a)(2) as are reasonable in a business of the type which the taxpayer conducts, and as are appropriate in the light of the taxpayer's business experience and accounting practice.  Income from the sale of tangible property arising out of research and development which extended over a period of more than 12 months is not included in the list of abnormal types of income to which section 456 is applicable, and such income may not constitute a class of income for purposes of that section.  However, section 456 is applicable to such income if the income is otherwise properly includible within a class of income to which such section is applicable, for example, the class described in section 456(a)(2)(D).

SEC. 721 [I.R.C. 1939]. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) Definitions.—For the purposes of this section—

\*    \*    \*    \*    \*    \*    \*

(2) Separate classes of income.—Each of the following subparagraphs shall be held to describe a separate class of income:

\*    \*    \*    \*    \*    \*    \*

(C) Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months; or

Congress reported with regard to the Korean War (sec. 456) counterpart of this class of abnormal income:

The equivalent provision in the World War II law (sec. 721) also permitted adjustments with reference to certain other types of income, particularly that *resulting from the sale of tangible property arising out of research and development which extended over a period of more than 12 months.* This provision in the old law was a potential loophole of major dimensions. Because there appeared to be no means of restricting such an adjustment to truly meritorious cases other than by the introduction of a large degree of administrative discretion of the type required by the general relief clause of the World War II law (sec. 722), and because the need for a reallocation of such income seemed to be materially less than in the other classes of income described above, *this item has been omitted from the list of abnormal types of income* for which a reallocation can be made under this bill. [H. Rept. No. 3142, 81st Cong., 2d Sess. (1950), p. 13. Emphasis added.]

Petitioner contends that its income is "otherwise properly includible within a class of income to which \* \* \* [sec. 456, I.R.C. 1939] is applicable" and therefore qualifies under the exception contained in the regulation. It contends that the income resulted from a "discovery" within the meaning of section 456(a)(2)(B), and that although the term "discovery" as used in that section may not encompass all inventions it does include new basic inventions of "revolutionary proportions" such as the Polaroid Land equipment and the stereo products. For purposes of this case we assume that petitioner's inventions may have been new, startling, or even revolutionary.

But Congress intentionally excluded income from the sale of property resulting from research, whether or not constituting invention, as a potential class of abnormal income when it enacted section 456, and it did so regardless of the dynamic effect of an invention. Although the meanings of the terms "discovery" and "invention" may overlap in the field of patent law, see 35 U.S.C. sec. 100, we do not read the section before us as indicating that Congress intended the term "discovery" to include what is normally thought of as patent-

able inventions.[5]   Cf. sec. 456(a)(2)(C), *supra* at footnote 2.   Respondent's suggestion that "discovery" was used to refer to the gas, oil, and mining industries has some merit inasmuch as it is interposed between "exploration" and "prospecting" which are normally thought of in connection with those industries.   This, however, is a question we need not decide.   The narrower interpretation of section 456 is necessary if we are to give effect to the action taken by Congress in changing the language of the predecessor of that very section to exclude income resulting "from the sale of tangible property arising out of research and development which extended over a period of more than 12 months."   *Searle & Co.* v. *Jarecki*, (N.D. Ill.) —F. Supp.— (May 11, 1959).

Petitioner further contends that although its income may not fall within one of the classes enumerated in section 456, it is entitled under respondent's regulations [6] to group this income in such classes "as are reasonable in a business of the type which * * * [it] conducts, and as are appropriate in the light of * * * [its] business experience and accounting practice."   Although this regulation provides that such a grouping is subject to respondent's approval, petitioner contends that the provision in section 456(a)(2) that "the classification of income of any class not described * * * shall be subject to regulations prescribed by the Secretary" was intended to broaden the classes and that the respondent has no right to refuse approval to petitioner's classification.   That section does not require respondent to classify all income.   He did not approve of petitioner's classification and, furthermore, his regulation specifically excludes the type of income in question with an exception which we have found not applicable to petitioner.   Petitioner's income earned in 1951, 1952, and 1953, was not abnormal within the meaning of section 456.

The second issue is whether the interest with which petitioner was credited in 1951 upon its successful claim for an excess profits tax refund, and which was admittedly abnormal income, must be reduced

---

[5] "Webster's New Collegiate Dictionary defines 'exploration' as '[a]ct of exploring, as for geographical discovery,' and in discussing the word 'discover' the same work says: 'Discover presupposes exploration * * *.' It also defines 'discovery' as '1. Act of discovering,' and the verb 'prospect' as '[t]o explore or examine for something.' We consider that Congress in using the words 'exploration, discovery, or prospecting' meant acts leading up to and antedating the finding of the thing discovered, which in this case, according to the hypothesis made by both parties, was the oil pool here in question. A factor leading us to this conclusion is the deliberate omission by Congress in enacting section 456(a)(2)(B) of the word 'development,' which had appeared in the predecessor statute. We consider that Congress did not mean the words 'exploration, discovery, or prospecting' to include acts seeking information about the thing already discovered, performed as incidents to its development and exploitation after it was discovered." (*Big Four Oil & Gas Co.*, 29 T.C. 31, 41.)

[6] See footnote 4, *supra*.

in computing petitioner's net abnormal income under section 456(a) (3) [7] by the interest which it was charged on income tax deficiencies which were attributable to the reduced excess profits tax. In the words of the statute, the question is whether the interest on the income tax deficiency is a cost or deduction "relating" to the interest on the excess profits tax refund.

Although the corporate income tax and the excess profits tax are separate and distinct types of taxes, *Babcock & Wilcox Co.* v. *Pedrick*, (C.A. 2) 212 F. 2d 645, certiorari denied 348 U.S. 936, they are related in some aspects. The net dollar return to petitioner from its excess profits tax refund claim was reduced by a corresponding income tax deficiency, because as petitioner was successfully able to reduce its adjusted excess profits net income its normal tax net income increased. Sec. 26(e), I.R.C. 1939, applicable to the relevant years 1942 and 1943. There was, at least to that extent, a relationship between the World War II excess profits tax and the income tax.

It is not necessary to say that income tax and excess profits tax are not different taxes in order to say that they are "related." Computation of one is reciprocal to that of the other, and it is this arithmetic relationship which led automatically and inevitably to the deficiency in income tax upon reduction of and determination of overassessment in the excess profits tax. *Morrisdale Coal Mining Co.*, 21 T.C. 393; *Ambassador Hotel Co. of Los Angeles*, 32 T.C. 208.

Interest on the one was due to the petitioner by reason of the same fact that caused interest on the other to be due from petitioner, namely, allowance of petitioner's claim under section 722. We think it would hence be totally illogical to say that the two payments are not "related." And that the interest payable by petitioner was a "deduction" cannot be questioned. Sec. 23(b), I.R.C. 1939. It need not also be a "cost." We conclude that respondent did not err on either ground urged.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[7] SEC. 456. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.
(a) DEFINITIONS.—For the purposes of this section—
* * * * *
(3) NET ABNORMAL INCOME.—The term "net abnormal income" means the amount of the abnormal income less, under regulations prescribed by the Secretary, * * * (B) an amount which bears the same ratio to the amount of any costs or deductions relating to such abnormal income, allowable in determining the normal-tax net income for the taxable year, as the excess of the amount of such abnormal income over 115 per centum of such average amount bears to the amount of such abnormal income.