John Hamilton Perkins and Virginia M. Perkins v. Commissioner.
Perkins v. Commissioner
Docket No. 56782.
United States Tax Court
T.C. Memo 1957-128; 1957 Tax Ct. Memo LEXIS 122; 16 T.C.M. (CCH) 548; T.C.M. (RIA) 57128; July 12, 1957
*122 W. L. Mims, Esq., Massey Building, Birmingham, Ala., for the petitioners. Lester R. Uretz, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax and additions to the tax as follows: Addition to Tax
Sec.
Sec.
Year
Income Tax
Sec 293(a)
294(d)(1)(A)
294(d)(2)
Total
1947
$ 4,156.30
$207.82
$ 4,364.12
1948
10,585.10
529.26
11,114.36
1949
15,430.16
771.51
16,201.67
1950
6,307.62
315.38
$754.97
$452.98
7,830.95
The issues presented are: (1) Whether petitioners received taxable dividends from the Virginia Realty Company, Inc., during the taxable years 1947 and 1948 in the respective amounts of $4,250 and $7,100; (2) Whether petitioners received taxable income from Larkway Gardens Corporation in the year 1947 in the amount of $4,014.69; (3) Whether petitioners realized taxable gains from the sale of 50 shares of the capital stock of Virginia Realty Company, Inc., in 1948 in the amount of $34,440.31; (3)[(4)] Whether the amount of $39,367.42 received by petitioner from the Virginia Realty Company, Inc., is taxable as *123 a dividend to the extent of $33,889.32; and (5) Whether some part of the deficiencies for each of the taxable years 1947 to 1950, inclusive, is due to negligence or intentional disregard of rules and regulations. Respondent abandons his alternative claim for increased deficiencies in income tax and an addition to the tax under section 293(a), Internal Revenue Code of 1939 for the taxable year 1950 raised by an amended answer and concedes that there are no increased deficiencies due from petitioners for the year 1950. Respondent concedes that the following adjustments in petitioners income appearing in the notice of deficiency are erroneous: Year
Item
Amount
1947
(c) Increase in gain on sale of real estate
$1,417.45
1948
(c) Salary, LaGrange Realty Company
600.00
1949
(b) Miscellaneous expense
3,433.33
Petitioner concedes the following adjustments appearing in the notice of deficiency are correct: Year
Item
Amount
1947
(d) Interest
$ 239.85
1948
(b) Interest paid
329.61
1950
(3) Increase in
7,227.95
capital gains
Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners are *124 husband and wife residing in Birmingham, Alabama. They filed their joint income tax returns for the taxable years involved with the collector of internal revenue for the district of Alabama. Virginia M. Perkins is a party because of the filing of joint returns, and John Hamilton Perkins will be referred to hereinafter as petitioner. Petitioner for a number of years has been associated with various real estate ventures in and around Birmingham, Alabama. He is president and principal stockholder of the J. H. Perkins Company, Inc., a real estate corporation, hereinafter referred to as the "Perkins Company." Virginia Realty Company, Inc., hereinafter referred to as the "corporation", was formed on April 29, 1944, under the laws of the state of Alabama, for the purpose of dealing in real estate activities. Its authorized capital stock consisted of 100 shares of common stock of the par value of $20 per share. The stock was issued as follows: Fadwa Adrey, 50 shares; petitioner, 49 shares; and J. H. Garrett, 1 share. Subsequently, petitioner acquired the one qualifying share from Garrett. At the time of the organization of the corporation petitioner and Joseph Adrey, husband of Fadwa *125 Adrey, each paid the sum of $3,750 to the corporation. Upon the receipt of the $7,500, the amount of $2,000 was credited by the corporation to its capital stock account and the remaining $5,500 was credited to an account designated "Capital Surplus Account." In 1945 and 1946, petitioner and Joseph Adrey each advanced equal amounts to the corporation which sums were credited on the corporate records to its capital account. In 1947 and 1948 the corporation paid to petitioner and Joseph Adrey certain amounts. A transcript of the capital account as it appears on the corporation's books discloses entries as follows: Credited to
Received by corporation
Capital Surplus
from individuals:
Adrey
Perkins
5-20-44
$ 2,750.00
$ 2,750.00
12-17-45
$ 725.00
4-26-46
$ 725.00
6-19-46
$ 2,500.00
2,500.00
12-18-46
7,199.08
7,199.08
Totals, 1946
$ 9,699.08
$10,424.08
Received by individuals
from corporations: 3-14-47
$ 1,500.00
$ 1,500.00
5- 7-47
1,250.00
1,250.00
10-30-47
1,500.00
1,500.00
Totals, 1947
$ 4,250.00
$ 4,250.00
3-17-48
$ 3,000.00
$ 1,500.00
5-31-48
1,500.00
6-30-48
2,200.00
7-31-48
6,600.00
9-30-48
5,250.00
1,750.00
10-14-48
1,200.00
400.00
11-27-48
3,750.00
1,250.00
Totals, 1948
$21,300.00
$ 7,100.00
*126 The officers of the corporation were Joseph Adrey, president, Fadwa Adrey, vice president, and petitioner, secretary and treasurer. Fadwa took no active part in the affairs of the corporation. Joseph Adrey owned and operated, as sole proprietor, a restaurant in Birmingham, Alabama, known as Joe's Steak House. The operations and management of the corporation were primarily left to petitioner. Its business was carried on and the corporate records were kept in the office of the Perkins Company. The sums which Joseph Adrey paid to or for the corporation in 1946 were paid by his personal check. He designated such payments on his check book stubs as "Loans." No notes were given by the corporation to petitioner or to Adrey evidencing the indebtedness to them, no interest was paid thereon, and no certain time was fixed for the repayment of the alleged loans. The earned surplus of the corporation as of May 31, 1947, 1948, and 1949, was in the respective amounts of $15,391.01, $31,157.52, and $59,039.22. In the taxable years 1947 and 1948, petitioner received from the corporation the amounts of $4,250 and $7,100, respectively. No part of such sums was reported in the joint returns *127 filed for such years. In the deficiency notice the respondent determined that the amounts which petitioner paid into the corporation in the years 1944 to 1946, inclusive, aggregating $13,174.08, were contributions to capital, and increased the cost of the 50 shares of capital stock which petitioner acquired in 1944 to determine the adjusted basis for such shares. The amounts aggregating $13,174.08 which petitioner advanced to the corporation in the years 1944 to 1946, inclusive, were loans and not contributions to capital. The amounts of $4,250 and $7,100 which were paid by the corporation to petitioner in the taxable years 1947 and 1948, respectively, were repayment of loans made to the corporation in prior years. Re: Larkway Gardens, Inc. In 1947, petitioner, together with three associates, promoted and organized Larkway Gardens, Inc., hereinafter referred to as "Gardens." Each had a 25 per cent interest therein. Prior to its organization petitioner and his associates had advanced the sum of $22,741.25 in the form of a land mortgage and cash to Larkway Housing Corporation. In September 1947, the latter corporation was dissolved and its assets and liabilities were transferred *128 to Gardens. Thereupon, Gardens issued 2,000 shares of class "A" stock and 36,800 shares of class "D" stock, each class having a par value of $1 per share. Petitioner received 500 shares of class "A", and 9,200 shares of class "D" stock. The general journal of Gardens discloses the following entries: 1947
Dr.h
Cr.
Sept.
Advances from W. J. Boothby
5,685.32
Advances from E. C. Bloom
5,686.31
Advances from J. H. Perkins
5,685.31
Advances from F. R. Daugette
5,685.31
Construction Costs
16,058.75
(Consisting of stockholders in setting up the
project. Not including builders fee to F. R.
Daugette which was paid by issuance to him of
97,285 shares of $1.00 par Class "E" Stock.)
To
Class "A" Stock - 2,000 shares of $1.00 par value
2,000.00
Class "D" Stock - 36,800 shares of $1.00 par value
36,800.00
To record payment by stockholders for Class "A" &
Class "D" stock.
On September 20, 1947, petitioner and his associates each paid to Gardens the further sum of $7,975.75, which amount is not reflected on the general journal, but is reflected on the cash journal. In the deficiency notice the respondent treated the *129 item of $16,058.75 shown on the general journal as "Construction Costs", as representing services and included one-fourth of such amount, or $4,014.69, in petitioner's income as ordinary income. Petitioner performed no service for Gardens. The amounts which petitioner paid into Gardens were in excess of the par value of $9,700 of the class "A" and class "D" stock issued to him. Re: Sale of Virginia Realty Co., Inc., Stock in 1948 On February 12, 1948, Fadwa Adrey acquired from E. C. Bloom 25 shares of the stock of the corporation increasing her holdings to 75 shares. The petitioner on that date owned 25 shares having sold 25 shares to Bloom in 1946. In April or May 1948, petitioner and Joseph Adrey executed an agreement to sell all the outstanding stock of the corporation for the sum of $100,000, to Gerald Stone. In executing the agreement, Stone was acting as trustee for himself, B. C. Paden, Albert Moore, and petitioner, under a separate oral agreement. The amount of $5,000 was paid as earnest money, and the balance was to be paid in 60 or 90 days. Prior to the expiration date, Stone, Paden, and Moore, sold their interest in the contract to petitioner for $10,000, and in *130 consideration for an extension of time for the closing petitioner paid Adrey an additional $5,000. Prior to the closing date, L. B. Fuller agreed with petitioner to purchase 50 shares of the capital stock of the corporation. On October 25, 1948, Fuller and petitioner borrowed the sum of $72,500 from T. M. McClellan, Jr. and issued their joint promissory note due in 90 days. Endorsed on said note is a description of the collateral pledged as security for the loan. Included in the collateral described was certificate No. 7, for 49 shares of Virginia Realty Company, Inc., issued to L. B. Fuller, certificate No. 8, for 1 share issued to Claudine Fuller, and certificate No. 9, for 50 shares issued to petitioner. On the same date, certificate No. 5 for 25 shares previously issued to petitioner was endorsed in blank and marked "cancelled and reissued." In Schedule "D" of the joint return filed by petitioners for the year 1948 three sales of the capital stock of Virginia Realty Company, Inc., were reported as follows: Cost
Acquired
Sold
Sales
(Adjusted)
Gain
Taxable Gain
Price
25 shares
10-25-48
10-26-48
$44,213.20
$18,729.37
$25,483.83
$25,483.83
25 shares
6- 1944
10- 1946
6,850.00
650.00
6,200.00
3,100.00
25 shares
6- 1944
10- 1948
25,000.00
10,100.00
14,900.00
7,450.00
$36,033.83
*131 In the deficiency notice, respondent determined that petitioners realized taxable gains from the three sales of the capital stock of the Virginia Realty Company, Inc., in 1948 as follows: Cost
Acquired
Sold
Sales Price
(Adjusted)
Gain
Taxable Gain
25 shares
10-25-48
10-26-48
$44,213.20
$18,729.37
$25,483.83
$25,483.83
25 shares
1944
1- 1948
12,837.17
7,087.04
5,750.13
2,857.07
25 shares
1944
1948
25,000.00
7,087.04
17,912.96
8,956.48
Total
$37,297.38
Petitioner did not make any sales of the capital stock of the Virginia Realty Company, Inc., in the taxable year 1948. Income from Virginia Realty Company, Inc. On January 11, 1949, petitioner and Fuller each borrowed from the Virginia Realty Company, Inc., the sum of $39,367.42, and each executed and delivered his promissory note to the corporation payable on or before 36 months after date, with interest at 4 1/2 per cent until paid. The loan to petitioner and Fuller was authorized by the stockholders and directors at a joint meeting held on January 6, 1949. The proceeds of the loans were used by petitioner and Fuller to discharge their indebtedness *132 to McClellan on their joint note of October 25, 1948. On April 4, 1951, Fuller paid the corporation the sum of $43,373.02 in payment of his note with accrued interest. Thereafter in 1951, petitioner acquired all of Fuller's stock and became the sole stockholder. Petitioner paid no interest on his note. Later in 1951, petitioner dissolved the corporation. He treated the note as an asset and included in the liquidating dividend he received the face value of the note. He also increased the basis of his stock by the amount of the note. In the deficiency notice the respondent treated the amount of $39,367.42, as a taxable dividend received by petitioner in 1949, to the extent of $33,889.32. Opinion LEMIRE, Judge: The first issue presented involves the propriety of respondent's action in determining that the amounts of $4,250 and $7,100 received by petitioners in the taxable years 1947 and 1948, respectively, from the Virginia Realty Company, Inc., were taxable as ordinary dividends. Petitioners contend that the amounts in question were repayments of loans. The parties have stipulated that the exhibits and oral testimony of Joseph Adrey and John Hamilton Perkins introduced in *133 the companion case of Joseph Adrey and Fadwa Adrey, Docket No. 56809 [1] [16 TCM 379, T.C. Memo. 1957-90], may be considered as evidence in the present proceeding. In the instant case the advances made by Perkins to the corporation were identical in amount to those made by Adrey. In the Adrey case, supra, we found as an ultimate fact that the advances made by Adrey in the years 1944 to 1946, inclusive, were loans and not contributions to capital. See footnote 1. On the basis of the present record we have made a similar finding of fact; i.e., that the amounts aggregating $13,174.08 which Perkins advanced to the corporation in the years 1944 to 1946, inclusive, were loans. The amounts of $4,250 and $7,100 which petitioners received from the corporation in the taxable years 1947 and 1948, respectively, were repayments of the loans made to the corporation in prior years. As the total amounts advanced by petitioner are in excess of the aggregate payments received in 1947 and 1948, it follows that no part of such payments constituted taxable dividends in those years. The cost basis of the shares of *134 capital stock of the corporation acquired by petitioner in 1944 is to be adjusted accordingly. The second question presented is whether the respondent properly determined that the sum of $4,014.69, representing the alleged excess of the par value of the capital stock of Larkway Gardens Corporation received in 1947 over the amount paid therefor, is taxable income. Petitioner and three associates organized Larkway Gardens Corporation in 1947 each having a 25 per cent interest therein. Prior thereto, petitioner and his associates each had advanced $5,685.32 to a predecessor corporation which was dissolved in September 1947, and its assets and liabilities were transferred to "Gardens." Thereupon, Gardens issued 2,000 shares of its class "A" stock and 36,800 shares of its class "D" stock, each with a par value of $1 per share to its incorporators, each receiving one-fourth of each class of stock. The entries on the general ledger reflect the advance of $5,685.32 by petitioner and each of his associates. The amount of $16,058.75 is reflected as "Construction Costs." The respondent treated one-fourth of the amount of $16,058.75, or $4,014.69, as constituting stock issued to petitioner *135 for services, and hence such amount was taxable income received in 1947. The cash journal of Gardens reflects that on September 20, 1947, each incorporator advanced the additional amount of $7,975.75. Petitioner contends that the amount of $7,975.75 was in payment of the stock he received. The respondent argues that the advance of the $7,975.75 was an additional contribution to capital and thus increases the cost basis of petitioner's stock. Predicated solely on the entries reflected in the general ledger there is merit in the respondent's contention. The entries on the corporate books are incomplete. The record does not show the date the stock was issued. Perkins testified that he performed no services for Gardens for which stock was issued and that the additional advance was in payment of the shares he received. This testimony is uncontradicted. Therefore, we have found as a fact that the amounts which petitioner paid into Gardens was in excess of the par value of the class "A" and class "D" stock he received in 1947. On this issue we sustain petitioners. In the joint return filed by petitioners for the year 1948, three sales of the capital stock of the Virginia Realty Company, *136 Inc., were reported with a realized taxable gain of $36,033.83. Petitioners now contend that no sales of the stock of such corporation were made in 1948 and that the accountant who prepared the return erroneously reported such sales as having taken place in 1948. The record respecting this issue is not too satisfactory. Perkins testified that he protested the inclusion of the sales at the time his accountant was preparing his return, nevertheless, he signed and filed it as prepared. The record does not make clear what occurred at the conference with the accountant or what evidence the accountant possessed at that time. The accountant having died in the meantime, was not available as a witness. The respondent concedes that the reported sales of 25 shares to Bloom shown on the 1948 return took place in 1946, and was erroneously included. The record establishes that as of February 1948, Adrey owned 75 shares and petitioner owned 25 shares of the capital stock of Virginia Realty Company, Inc. In April or May 1948, Adrey and petitioner entered into an agreement to sell their 100 shares to Stone for $100,000. In executing the agreement, Stone was acting as trustee for himself, Paden, *137 and Moore. The agreement, inter alia, provided for the payment of $5,000 earnest money with the balance to be paid in 60 or 90 days. Stone, Paden, and Moore, decided not to complete the purchase and sold their interest in the contract to petitioner for $10,000. At petitioner's request, Stone retained the contract in his name as trustee. In order to obtain an extension of time for closing the contract, petitioner paid Adrey an additional $5,000. Thereafter, at some undisclosed date, petitioner procured an agreement from Fuller to purchase 50 shares of such capital stock. Petitioner and Fuller thereupon obtained a loan from McClellan in the amount of $72,000 and executed their joint promissory note therefor. The proceeds of the loan were paid to Adrey. The settlement date occured on October 25, 1948. It appears from the documentary evidence that certificates representing 75 shares held by Adrey were endorsed in blank, and the certificate representing the 25 shares then held by petitioner was endorsed in blank, and were surrendered and marked cancelled. A certificate for 50 shares was issued to Fuller and a certificate for 50 shares was issued to petitioner. The joint note of Fuller and *138 petitioner delivered to McClellan carries the endorsement, inter alia, that each had pledged his respective certificate for 50 shares as collateral for the aforesaid loan. Because the accountant reflected the sale of such shares in the 1948 return, the respondent draws the inference that the accountant was informed by the petitioner that he had purchased the 75 shares from Adrey and then sold 50 shares to Fuller, and that petitioner has now changed his conception of the transaction in order to secure the favorable tax consequences. Not having the benefit of the accountant's testimony, we are not inclined, on the basis of the entire record, to draw such conclusion. Fuller was not called as a witness. Stone, a disinterested witness, took the stand, but his testimony is not too helpful. He testified that he received no stock certificates and transferred none; that while he was present at the closing, he did not know what transpired, except he saw "a bunch of money being borrowed at the closing, a bunch of papers there switch back and forth * * *." Based on the oral testimony, but primarily on the documentary evidence presented, we think the fair inference to be drawn is that petitioner *139 carried out the agreement because he had been successful in inducing Fuller to purchase 50 shares of the Adrey stock before the closing date. We have found as a fact that petitioner did not sell any shares of the capital stock of Virginia Realty Company, Inc., in the taxable year 1948, and we therefore sustain the petitioners on this issue. The next question presented is whether petitioner received taxable dividends to the extent of $33,889.25 in the taxable year 1949. The respondent contends that the amount of $39,367.42 which petitioner allegedly borrowed from the Virginia Realty Company, Inc., in 1949 was, in fact, a withdrawal of corporate funds and constituted a taxable dividend to the extent of the available earnings and surplus. Petitioner contends it was a bona fide loan from the corporation. The record establishes that in 1949, petitioner and Fuller, each owning 50 per cent of the stock of the corporation, requested a loan of sufficient funds to discharge their indebtedness to McClellan, hereinabove referred to. The loan was authorized by a resolution adopted by the stockholders and directors. Both petitioner and Fuller executed and delivered his promissory note to the *140 corporation in the face amount of $39,367.42, payable in 36 months from date with interest at 4 1/2 per cent. The proceeds were used to discharge their indebtedness to McClellan. The notes were shown on the corporate books as accounts receivable. Petitioner made no interest payment on his note. In 1951, Fuller paid off his note with accrued interest. Thereafter, in 1951, petitioner acquired Fuller's stock and later in that year the corporation was liquidated. In the joint return for 1951, the note was included as a part of the liquidating dividend received in that year, and petitioner's basis for his stock was increased by the amount of the note. The year 1951 is not before us. We are here concerned solely with the bona fides of the transaction, which present a question of fact. That petitioner paid no interest on his note is a factor indicative of a withdrawal of funds rather than a loan, we think it is not controlling when considered in the light of the entire record. Petitioner owned a 50 per cent interest in the corporation which is to be regarded as a separate entity. On the basis of the facts germane to this issue, we are persuaded that the loan by the corporation was a bona *141 fide transaction. Therefore, the respondent erred in determining that petitioner received a taxable dividend in the taxable year 1949 from the Virginia Realty Company, Inc. In the deficiency notice for the year 1950, the respondent made certain adjustments to net income and imposed additions to the tax pursuant to sections 293(a), 294(d)(1)(A) and 294(d)(2) of the Internal Revenue Code of 1939. Petitioners assign as error the action of the respondent in increasing the capital gain reported by the amount of $7,227.95, and also the addition to the tax under section 293(a), only. The petitioners concede the correctness of the adjustment to the item of capital gain. Therefore, the only issue submitted to us for the taxable year 1950 is the propriety of the addition to the tax under section 293(a) for negligence or intentional disregard of the rules and regulations. It is also to be noted that petitioners contest the imposition of the additions to the tax under section 293(a) for each of the years 1947, 1948, 1949, as well as 1950. Petitioners have offered no evidence and make no argument against the additions to the tax under section 293(a) other than that *142 the taxable income reported is more accurate than that determined by the respondent. The revenue agent who made an audit of petitioners' returns for the years involved testified that the records were in a confused state and that she was unable to determine from the records furnished her how petitioners have computed their taxable income. Furthermore, the large number of adjustments made by the respondent in the deficiency notice which petitioner has not contested, or now concedes, satisfies us that the addition to the tax for negligence is justifiable. Therefore, we approve the addition to the tax under section 293(a) of the Code for each of the taxable years 1947 to 1950, inclusive, to the extent any deficiencies are determined under a recomputation in conformity with this opinion. Decision will be entered under Rule 50. Footnotes
1. Memorandum Findings of Fact and Opinion filed May 31, 1957.↩