JOHN HAMILTON PERKINS AND VIRGINIA M. PERKINS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78070. Filed May 19, 1961.

*Walter L. Mims, Esq.,* and *Sam C. Pointer, Jr., Esq.,* for the petitioners.

*Frederick T. Carney, Esq.,* for the respondent.

PIERCE, *Judge:* Respondent determined a deficiency in the petitioners' income tax for the year 1951, in the amount of $26,666.78.

Said deficiency was determined through application of sections 1311 through 1315 of the 1954 Code (pertaining to. mitigation of effect of limitations)—which sections make provision for the correction, in certain situations, of the effect of an erroneous treatment of an item

**314**

of income or deduction, after expiration of the normal statutory period of limitations.

The issues for decision are:

(1) Whether said sections 1311 through 1315 of the 1954 Code are here applicable, to permit correction of the petitioners' 1951 income as previously adjusted, by inclusion therein of an additional item of income in the amount of $39,367.42.

(2) Whether, if the foregoing issue is answered in the affirmative, petitioners are entitled to have said additional income treated as long-term capital gain, rather than as short-term capital gain as determined by respondent.

The facts of the case have been established, not only by certain evidence received at the trial herein and by certain admissions contained in the pleadings and briefs, but also by this Court taking judicial notice, in accordance with agreement of the parties, of the issues and of this Court's opinion and decision in a prior interrelated case of the same parties for a prior taxable year. This interrelated case, which is mentioned in the notice of deficiency, is *John Hamilton Perkins*, T.C. Memo. 1957–128.[1]

## FINDINGS OF FACT.

Petitioners, John Hamilton Perkins (hereinafter called the petitioner) and Virginia M. Perkins, are husband and wife residing in Birmingham, Alabama. They filed a joint income tax return for the year 1951, with the collector of internal revenue for the district of Alabama.

### Facts re Virginia Realty Company, Inc.

Petitioner, for several years prior to the taxable year involved, had carried on various real estate activities; and, in the middle 1940's, he with others organized a corporation, known as Virginia Realty Company, Inc. (hereinafter called the Realty Corporation), to conduct real estate business in the Birmingham area. He was one of the original stockholders of this corporation; and also, at various times, he was one or another of the principal officers thereof.

In 1949, while petitioner was an officer and stockholder of said Realty Corporation, he withdrew therefrom the sum of $39,367.42; and in connection therewith, he delivered to the corporation his personal promissory note for the same amount. This purported "loan"

---

[1] The propriety of a court taking judicial notice of its own acts in a prior interrelated case involving the same parties was considered and approved by the Supreme Court in *Freshman* v. *Atkins*, 269 U.S. 121, 124; and also by this Court in *Ambassador Hotel Co. of Los Angeles*, 32 T.C. 208, 215–216, affd. 280 F. 2d 303 (C.A. 9), certiorari denied 364 U.S. 928. In said *Freshman* case, the Supreme Court, after noting that one court is not bound to search the records of other courts and give effect to their judgments, said: "This is far from saying that the court may not take judicial notice of, and give effect to, its own records in another but interrelated proceeding."

was never repaid by petitioner to said corporation. And as is hereinafter more fully shown, the corporation included petitioner's said promissory note among its assets as a receivable, until its dissolution in 1951 when the note was distributed to petitioner in final liquidation. It is the tax treatment of said "loan" and promissory note which is here directly involved.

In about 1950 or 1951, which was subsequent to said "loan" transaction, Realty Corporation acquired an interest in a large preexisting apartment development in the Birmingham area, and thereupon undertook the improvement and operation of the same. In this connection, it obtained a substantial mortgage loan from the Life Insurance Company of Virginia. Petitioner, as an officer of Realty Corporation, personally handled the arrangements for this loan with Carl D. Hulsey, who was one of the partners of a mortgage loan company which acted as a loan correspondent for the insurance company. Through the transaction, petitioner became acquainted with Hulsey.

On April 16, 1951, petitioner, in another and separate transaction, personally borrowed $12,500 from two individuals, Harold and A. Berkowitz, on two promissory notes which he alone executed in the amounts of $10,000 and $2,500, respectively. Each of these promissory notes provided that it would become due and payable on May 16, 1951 (30 days after date), with interest at 5 percent per annum; and the larger note was secured by petitioner's pledge and deposit with the lender of certificates for 50 shares (being 50 percent of the outstanding shares) of the capital stock of the Realty Corporation.

At some unidentified time prior to May 1951, petitioner became the sole owner of all shares of stock of Realty Corporation.

Thereafter, and shortly prior to the 30-day maturity of his two promissory notes held by the Berkowitzes, petitioner went to the above-mentioned mortgage loan company with which he had become acquainted in handling the mortgage loan for his corporation, and he there attempted to arrange for a new personal loan for himself, in an amount sufficient not only to pay off the Berkowitz notes but also to provide him with additional funds. The mortgage loan company refused to enter into the kind of arrangement which petitioner wanted; but thereupon, Carl D. Hulsey of that firm indicated that he might work out a personal arrangement with petitioner. Hulsey then consulted with his attorney regarding the matter; and thereafter, negotiations were had between petitioner, the attorney, and Hulsey. The result was that, under date of May 18, 1951, petitioner and Hulsey entered into a two-phase arrangement, which was evidenced by the following instrument:

TEMPORARY AGREEMENT BETWEEN HAMILTON PERKINS AND CARL D. HULSEY

STATE OF ALABAMA

JEFFERSON COUNTY

It is hereby agreed by and between Hamilton Perkins on the one part and Carl D. Hulsey on the other part that Carl D. Hulsey will advance to Hamilton Perkins the sum of $12,500.00 in consideration of which Hamilton Perkins will execute a request to Abe Berkowitz and associates that they transfer without recourse any obligations they now hold of Hamilton Perkins, resign as directors and officers of The Virginia Realty Company, Inc., and turn over all stock, books, collateral and property of every kind and character of The Virginia Realty Company, Inc., and that they deliver the same to Carl D. Hulsey.

Carl D. Hulsey does by this agreement extend the due date of said note to the 28th day of May 1951, upon the agreement and understanding that if an audit of the books and an examination of the corporate records of The Virginia Realty Company, Inc., prove satisfactory to Carl D. Hulsey, he will advance to Hamilton Perkins the balance in order to increase the amount that he pays to the sum of $30,000.00. *That upon payment of said sum the entire stock of The Virginia Realty Company will be transferred to and be the property of Carl D. Hulsey and that Carl D. Hulsey will give to Hamilton Perkins an option to repurchase all of said stock for the sum of $45,000.00, said option to be exercised more than six months from date and within the present calendar year.* If the remainder of the money is advanced as herein contemplated, Carl D. Hulsey agrees to advance to The Virginia Realty Company, Inc., money required to complete the necessary repairs on the apartments owned by the said The Virginia Realty Company, Inc., to the satisfaction of the mortgages and to the limit of a total cost of $18,000.00 above what has already been expended by Hamilton Perkins or others toward this end. Said $18,000.00, or any part thereof, advanced shall be repaid from the $20,000.00 escrow money now held by The Life Insurance Company of Virginia, Mortgagee under that certain mortgage from The Virginia Realty Company to Garber, Cook and Hulsey, Inc., duly transferred to The Life Insurance Company of Virginia and the said Hamilton Perkins represents that there has been no other assignment or claim against said sum and that there now is on hand approximately eighteen hundred gallons of paint which has been paid for in full and which will be used in connection with repairs herein referred to.

In event the audit check of the corporate records of The Virginia Realty Company, Inc., does not prove satisfactory to Carl D. Hulsey, he shall have the right to foreclose the collateral and all interest on the same with Hamilton Perkins at private sale on or after 2:00 P.M. on the 28th day of May, 1951, without any right of redemption. This right in no manner affects the obligation of Hamilton Perkins as hereinabove stated if such investigation and audit prove satisfactory to Carl D. Hulsey *to sell the stock* in The Virginia Realty Company, Inc., as set out above.

In evidence to all of which the parties hereunto set their hands on this the 18th day of May, 1951.

/s/ Hamilton Perkins
/s/ Carl D. Hulsey

[Emphasis supplied.]

The above agreement was thereupon given effect by the parties, as follows:

Hulsey first advanced $12,500, either to petitioner or directly to Harold and A. Berkowitz—being the total amount of the two promissory notes of petitioner which the Berkowitzes held. The latter then endorsed each of the notes to the order of Hulsey, without recourse; delivered to Hulsey all shares of stock of the Realty Corporation which they held as collateral security for the notes; and also, in accordance with the first paragraph of the above-mentioned agreement, not only resigned as officers and directors of Realty Corporation but also turned over to Hulsey all books and records of the corporation which were in their possession. Hulsey then extended the due date of the two promissory notes to May 28, 1951, as provided in the agreement.

Subsequently on June 1, 1951, Hulsey paid to petitioner the additional sum of $17,500—thereby increasing his total payments to $30,000; and thereupon, in accordance with the terms of the second paragraph of the agreement, petitioner caused the entire stock of the Realty Corporation to "be transferred to and be the property of Carl D. Hulsey"; subject however to petitioner's "option to repurchase all of said stock for the sum of $45,000," after 6 months and within the same calendar year. Petitioner and his associates then resigned their offices with Realty Corporation; after which, Hulsey became the president, installed new officers and directors of his choice (not including the petitioner), and assumed full control over the corporation and all its business operations.

Also on June 1, 1951, Hulsey wrote the following letter to petitioner, pertaining to the latter's "option":

BIRMINGHAM, ALABAMA
*June 1, 1951*

Mr. HAMILTON PERKINS
*Birmingham, Alabama*

Dear Sir:

This confirms my oral agreement with you that other than reasonable and necessary expenses, no officer's salaries, dividends or other money will be drawn out of or paid from The Virginia Realty Company, Inc., during the calendar year 1951. The corporate setup including the issued stock and amount held by the company will not be changed during said period of time. Each share of stock issued to me will be marked, *this stock subject to option held by Hamilton Perkins.*

The company records will be so marked and *a copy of the option given you will be placed in the company records.*

The expenses above referred to as reasonable and necessary shall include reasonable expenses of an audit started and to be completed by Mr. Borland and a reasonable attorney's fee.

Very truly yours

/s/ Carl D. Hulsey

[Emphasis supplied.]

No agreement or contract, other than the above-mentioned agreement of May 18, 1951, and the above letter of June 1, 1951, were executed by Hulsey and petitioner. The record does not establish or

indicate that petitioner in any way obligated himself to repay any of the amount which Hulsey paid him; or that he received anything in connection with the transaction other than the $30,000 and the above-mentioned "option to repurchase" all of the Realty Corporation's stock.

During the first 6 months that Hulsey operated Realty Corporation, the surplus account of said corporation increased from about $82,000 to over $90,000. Hulsey made an offer to buy petitioner's option or to contract for nonexercise of the same, but petitioner rejected such offer. Instead, petitioner undertook to find persons to whom he might sell the stock or the assets of the corporation, in the event he exercised his option.

On December 18, 1951, petitioner did exercise his option to repurchase all the Realty Corporation stock, by paying to Hulsey the agreed amount of $45,000. Hulsey thereupon transferred to petitioner his certificates for all of the corporation's stock; and he also delivered to petitioner all the books and records and other instruments pertaining to the corporation. The gain which Hulsey derived from this transaction, represented by the difference between the $30,000 which he had paid petitioner for the stock, and the $45,000 which he received therefor, was reported by him on his 1951 income tax return as long-term capital gain.

Subsequently, on December 31, 1951, petitioner as sole stockholder of Realty Corporation, caused the corporation to be dissolved; and on the same date, he caused all of the net assets of the corporation to be distributed to himself in complete liquidation. One of the assets so distributed to him in liquidation was the above-mentioned promissory note for $39,367.42, which he had delivered to the corporation in 1949, and which the corporation had at all times thereafter included among its assets as a receivable.

*Facts re Tax Treatment of Petitioner's Promissory Note for $39,367.42.*

Petitioner and his wife filed their joint income tax return for the year 1951, on May 15, 1952. In Schedule D thereof, they reported long-term capital gains with respect to two items relating to Realty Corporation, as follows:

| | Date acquired | Date sold | Gross selling price | Cost or other basis | Gain |
|---|---|---|---|---|---|
| Partial liquidation of Virginia Realty Company | 1948 | 1951 | $28,086.30 | $1,000.00 | $27,086.30 |
| Liquidating dividend, Virginia Realty Company | 1948 | 1951 | 144,687.68 | 43,531.35 | 101,156.33 |

The first of these items, designated "partial liquidation," pertained to an amount which petitioner had received from Realty Corporation early in 1951, prior to his transfer of the stock of said corporation to Carl D. Hulsey; and this item is not here directly involved. The second item, designated "liquidating dividend," pertained to the final liquidating dividend which petitioner had received from Realty Corporation at the time of its dissolution on December 31, 1951.

Subsequent to the filing of said return, a revenue agent of the respondent made an examination thereof; and in connection therewith, he conferred with the accountants for petitioner, who had prepared the return, and he also examined the work papers which these accountants had used in their preparation of the same. This examination revealed that, although the above-mentioned promissory note for $39,367.42 which petitioner had delivered to Realty Corporation in 1949 had been treated as one of the assets that were distributed to petitioner in the 1951 final liquidation of that corporation, the amount of said note had been included both in the "Gross Selling Price" and in the "Cost Basis," which were reported on Schedule D with respect to said liquidating dividend. The result of these two offsetting inclusions was, that no portion of the amount of said promissory note was included either in the amount of the reported gain from such liquidation, or elsewhere in petitioner's 1951 reported income. Also no income tax was paid with respect to any portion of said promissory note for the year 1951.

Thereafter, on April 30, 1956, respondent issued a notice of deficiency to petitioner and his wife, with respect to their 1951 income tax. The principal determinations which respondent therein made, in computing the deficiency, were: (1) That the shares of stock of Realty Corporation, which petitioner had surrendered in the final liquidation of said corporation, had been acquired by him from Carl D. Hulsey on December 18, 1951; (2) that petitioner's basis for said shares was the amount of $45,000 which he had paid to Hulsey in exercising the option with respect to the same; and (3) that the gain which petitioner had realized from the final liquidation of Realty Corporation should be treated as short-term (rather than as long-term) capital gain. In computing the amount of such capital gain, respondent (apparently for reasons hereinafter shown) did not give any effect to, nor did he include either in the gain or in the 1951 income, any portion of the amount of petitioner's said promissory note for $39,367.42. Petitioner did not file a petition to this Court, or otherwise legally contest, the amount of the deficiency thus determined in said notice of deficiency for the year 1951. The normal statutory periods of limitation for the year 1951 (including both 3-year and 5-year periods) expired not later than May 15, 1957.

Prior to the issuance of the above-mentioned notice of deficiency for the year 1951, respondent issued another notice of deficiency to petitioner and his wife, in which he determined that there was a deficiency in their income tax for each of the years 1947 through 1950. This notice of deficiency was issued on December 14, 1954, which was within 3 years from the date when the said 1951 income tax return had been filed. Petitioner and his wife filed a petition to this Court with respect to this last-mentioned notice of deficiency; and the resulting case, entitled John Hamilton Perkins and Virginia M. Perkins v. Commissioner of Internal Revenue, Docket No. 56782, is the interrelated case which is mentioned in the notice of deficiency in the instant case, and to which reference has hereinbefore been made.

One of the issues presented in said interrelated case was whether the above-mentioned amount of $39,367.42 which petitioner had withdrawn from Realty Corporation in 1949 (and for which he had delivered the promissory note that was distributed to him upon liquidation of the corporation in 1951), should be included in petitioner's 1949 income, as a *taxable dividend* from Realty Corporation, to the extent of said corporation's then-available earnings and surplus.

This Court filed its Memorandum Opinion in said interrelated case on July 12, 1957 (T.C. Memo. 1957–128). In said opinion the Court held, with respect to the above-mentioned amount of $39,367.42 which respondent had sought in said case to tax to petitioner as a 1949 dividend:

On the basis of the facts germane to this issue, we are persuaded that the loan by the corporation [Virginia Realty Company, Inc.] was a bona fide transaction. Therefore, the respondent erred in determining that petitioner [John Hamilton Perkins] received a taxable dividend in the taxable year 1949 from the Virginia Realty Company, Inc.

The taxable year 1951 (involved in the instant case) was not before the Court in said interrelated case.

This Court's decision in said interrelated case, based on its opinion therein, was entered October 9, 1957; and that decision became final January 9, 1958.

Thereafter on September 24, 1958, which was less than 1 year from the effective date of said decision respecting the year 1949, respondent issued his notice of deficiency in the instant case; and he therein determined that the 1951 net income of petitioner and his wife should be adjusted as follows:

TAXABLE YEAR ENDED DEC. 31, 1951

*Adjustment of Net Income*

| | |
|---|---:|
| Net income as shown in statutory notice of deficiency dated April 30, 1956 | $82, 349.87 |
| Unallowable deductions and additional income: | |
| Short-term capital gain increased | 39, 367. 42 |
| Net income as adjusted | 121, 717. 29 |

*Explanation of Adjustment*

In Tax Court Memorandum Opinion 1957–128 in the case of *John Hamilton Perkins and Virginia M. Perkins* v. *Commissioner*, the court held that the amount of $39,367.42 drawn by John Hamilton Perkins from Virginia Realty Company, Inc., in 1949 represented a loan rather than a dividend as contended by the Commissioner. This sum, which the court held to be a loan, was evidenced by a note. The note was received by John Hamilton Perkins in December 1951 upon liquidation of Virginia Realty Company, Inc., as part of the corporate assets exchanged for his stock. Based upon the decision of the Court, it is determined that the said note should be included as part of the liquidating dividend and increases income by the full amount of $39,367.42 as shown below:

Net income as shown in statutory notice dated April 30, 1956___ $82,349.87
Add: Increased short-term capital gain_____ 39,367.42

Net income corrected_____ $121,717.29

Sections 22 (a) and 117 of the Internal Revenue Code of 1939 and sections 1311 to 1315 of the Internal Revenue Code of 1954.

OPINION.

## I.

The first issue here presented involves the applicability of certain provisions of sections 1311–1315 of the 1954 Code (pertaining to mitigation of the effect of limitations on assessment and collection of income taxes)—which sections, so far as here material, are set forth in the margin.[2] More specifically, the question is whether the re-

---

[2] I.R.C. 1954.

SEC. 1311. CORRECTION OF ERROR.

(a) GENERAL RULE.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

(b) CONDITIONS NECESSARY FOR ADJUSTMENT.—

(1) MAINTENANCE OF AN INCONSISTENT POSITION.—Except in cases described in paragraphs (3)(B) and (4) of section 1312 [maintenance of an inconsistent position is necessary]. * * *

 *  *  *  *  *  *  *

(2) CORRECTION NOT BARRED AT TIME OF ERRONEOUS ACTION.—

(A) Determination Described in Section 1312(3)(B).—In the case of a determination described in section 1312(3)(B) (relating to certain exclusions from income), adjustment shall be made under this part only if assessment of a deficiency for the taxable year in which the item is includible * * * was not barred, by any law or rule of law, at the time the Secretary or his delegate first maintained, in a notice of deficiency sent pursuant to section 6212 or before the Tax Court of the United States, that the item described in section 1312(3)(B) should be included in the gross income of the taxpayer for the taxable year to which the determination relates.

 *  *  *  *  *  *  *

SEC. 1312. CIRCUMSTANCES OF ADJUSTMENT.

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

 *  *  *  *  *  *  *

(3) DOUBLE EXCLUSION OF AN ITEM OF GROSS INCOME.—

 *  *  *  *  *  *  *

(B) Items Not Included in Income.—The determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer and with

spondent, Commissioner of Internal Revenue, may, pursuant to said sections as applied to the facts and circumstances here present: (1) Correct the petitioner's 1951 income as previously adjusted, by including therein an additional item of income in the amount of $39,367.42; and (2) give effect in the manner provided in said sections to the resulting increase in tax "in the same manner as if it were a deficiency," notwithstanding that, except for said sections, such action would be barred by the normal statute of limitations.

We are convinced that the above-mentioned sections of the 1954 Code are here applicable; and that the question above stated must be answered in the affirmative. A summary of the more pertinent facts and statutory provisions, which impels such conclusion, is as follows.

The facts which we have hereinbefore found, disclose a double exclusion by petitioner from his gross income of an item of $39,367.42. This item represents an amount which petitioner withdrew from Realty Corporation in 1949, when he was one of the principal stockholders and officers thereof, and also when said corporation had substantial earnings and surplus. He did not include said item as a *taxable dividend* in his 1949 gross income, on the ground that the same was a bona fide loan, evidenced by his promissory note for the same amount which the corporation thereafter carried in its assets

---

respect to which the tax was not paid but which is includible in the gross income of the taxpayer for another taxable year * * *.

SEC. 1313. DEFINITIONS.

(a) DETERMINATION.—For purposes of this part, the term "determination" means—

(1). a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final ;

\*          \*          \*          \*          \*          \*

SEC. 1314. AMOUNT AND METHOD OF ADJUSTMENT.

(a) ASCERTAINMENT OF AMOUNT OF ADJUSTMENT.—In computing the amount of an adjustment under this part there shall first be ascertained the tax previously determined for the taxable year with respect to which the error was made. * * *

\*          \*          \*          \*          \*          \*

* * * There shall then be ascertained the increase or decrease in tax previously determined which results solely from the correct treatment of the item which was the subject of the error (with due regard given to the effect of the item in the computation of gross income, taxable income, and other matters under this subtitle). * * * The amount so ascertained * * * for each taxable year shall be the amount of the adjustment for that taxable year.

(b) METHOD OF ADJUSTMENT.—The adjustment authorized in section 1311(a) shall be made by assessing and collecting, or refunding or crediting, the amount thereof in the same manner as if it were a deficiency determined by the Secretary or his delegate with respect to the taxpayer as to whom the error was made * * * for the taxable year or years with respect to which an amount is ascertained under subsection (a), and as if on the date of the determination one year remained before the expiration of the periods of limitation upon assessment * * * for such taxable year or years. * * *

.(c) ADJUSTMENT UNAFFECTED BY OTHER ITEMS.—The amount to be assessed and collected in the same manner as a deficiency, * * * under this part, shall not be diminished by any credit or set-off based upon any item other than the one which was the subject of the adjustment. * * *

(d) PERIODS FOR WHICH ADJUSTMENTS MAY BE MADE.—No adjustment shall be made under this part in respect of any taxable year beginning prior to January 1, 1932.

\*          \*          \*          \*          \*          \*

SEC. 1315. EFFECTIVE DATE.

(a) IN GENERAL.—This part shall apply only to determinations (as defined in section 1313(a)) made after the 90th day after the date of enactment of this title [enacted August 16, 1954].

until the time of its dissolution in 1951. Also petitioner did not include any portion of the amount of said unpaid promissory note in his gross income for the year 1951, when said promissory note was distributed to him as sole stockholder of said corporation, upon final liquidation of the corporation in the latter year.

The respondent, in an attempt to prevent said item of $39,367.42 from entirely escaping tax, proceeded first, at a time when the normal statute of limitations was open for both of the years 1949 and 1951, to tax said item as a *dividend* of the year 1949, to the extent of Realty Corporation's then available earnings and surplus. But this attempt was unsuccessful. For in the above-mentioned interrelated case involving the year 1949, this Court decided (as hereinbefore found) that the transaction in which petitioner withdrew said amount from Realty Corporation and delivered his promissory note therefor, was a bona fide transaction; and that respondent had erred in determining that petitioner had received a *taxable dividend* from the corporation in 1949.

Respondent then, in the instant case, invoked the provisions of sections 1311–1315 of the 1954 Code, so as to include the amount of said unpaid promissory note as part of the capital gain and gross income which petitioner realized upon liquidation of Realty Corporation in the year 1951—notwithstanding that, except for said sections, the year 1951 was then closed by the normal statute of limitations. In taking such action, the respondent has, in our opinion, met all the prerequisites to the application of said sections 1311–1315, to wit:

(1) This Court's decision in the above-mentioned interrelated case involving the year 1949, is a "determination" within the meaning of said term as used in sections 1311 and 1312, and as specifically defined in section 1313(a)(1). Also on the date of such determination, correction of the effect of the error here involved was prevented, except for sections 1311–1315 of the 1954 Code, by operation of the normal statute of limitations. The requirements of section 1311(a) are thus met.

(2) The particular paragraph of section 1312 which is here pertinent, is paragraph (3)(B) thereof. This paragraph applies, under its own terms, if the "determination" (here, this Court's decision in the interrelated case involving the year 1949) requires the exclusion from gross income (here, the gross income for 1949) of an item not included in a return filed by the taxpayer and in respect of which the tax was not paid; but which is includible in the gross income of the taxpayer for *another taxable year* (here, in the gross income for 1951). Such circumstance conforms with the facts of the instant case as hereinbefore found.

Also, this circumstance, provided for in paragraph (3)(B) of section 1312, is one of the two special circumstances in which main-

tenance of an inconsistent position is not a prerequisite to the adjustment. See, in this regard. sec. 1311(b)(1); Income Tax Regs., secs. 1.1311(a)–1(c), 1.1311(b)–2(c), and 1.1312–3(b).

(3) Assessment of a deficiency for the year 1951 was not barred by the statute of limitations, or otherwise, at the time the erroneous action was taken by the Commissioner—that is, when the Commissioner's notice of deficiency for the year 1949 was issued. Said notice of deficiency for the year 1949 was issued on December 14, 1954, which was within 3 years after the filing of the 1951 return, and also before respondent's first adjustment of petitioner's 1951 income in the notice of deficiency which he issued on April 30, 1956. Thus the requirement of section 1311(b)(2)(A) in this regard has been met.

(4) The deficiency in the instant case (whereby the 1949 error is sought to be corrected) was determined in the manner provided in section 1314(a). The notice of deficiency herein was issued on September 24, 1958, which was less than 1 year after the Court's decision in the 1949 case that gave rise to such correction. Thus the requirement of section 1314(b) also has been met. Income Tax Regs., sec. 1.1314 (b)–1(b).

(5) The adjustment meets the requirement of section 1314(d), in that it relates to a taxable year beginning after January 1, 1932; and it meets also the requirement of section 1315(a), because the "determination" (i.e., the decision of this Court in the 1949 case) was made more than 90 days after the enactment of subtitle A of the Internal Revenue Code of 1954 (which date of enactment was August 16, 1954).

Petitioner's plea of the running of the normal statute of limitations contained in section 275 of the 1939 Code, is not a defense to the application of said sections 1311–1315 of the 1954 Code. Indeed the only effect of such plea is to provide a concession that one of the prerequisites to application of the latter sections (i.e., the prerequisite contained in section 1311(a)) has been met. To the same effect (as applied to another Mitigation of Effect of Limitations provision) see *Ambassador Hotel Co. of Los Angeles*, 32 T.C. 208, 216–217, affd. (C.A. 9) 280 F. 2d 303, certiorari denied 364 U.S. 928.

Based on all the foregoing, we decide this first issue in favor of the respondent.

## II.

The remaining issue for decision is: When the amount of petitioner's said promissory note for $39,367.42 is added to the amount of the other assets which petitioner received on final liquidation of Realty Corporation, should the resulting additional capital gain that petitioner realized from said liquidation be treated as *long-term* capital gain (as petitioner contends), or as *short-term* capital gain (as deter-

mined by respondent in his notice of deficiency herein)? We think that respondent's determination in this regard is correct.

This same basic question—as to how petitioner's gain from the 1951 final liquidation of Realty Corporation should be classified for capital gain purposes—was first dealt with by respondent in his prior notice of deficiency for the year 1951, which he issued on April 30, 1956. Said prior notice of deficiency is specifically referred to in respondent's later notice of deficiency for the year 1951, which was issued on September 24, 1958, and which is here directly involved. Also, as is shown in the statement attached to said later notice of deficiency, the corrections made therein represent adjustments to the net income and the tax liability which were determined in said prior notice of deficiency dated April 30, 1956.

The principal adjustments to petitioner's 1951 return, which were made in said prior notice of deficiency, were based upon an examination conducted by respondent's agents, and they were (as we have hereinbefore found): (1) That the shares of capital stock of Realty Corporation which petitioner surrendered to said corporation in the final liquidation thereof, were acquired by him from Carl D. Hulsey on December 18, 1951; (2) that petitioner's basis for the shares so surrendered was the amount of $45,000 which he had paid to Hulsey in exercising his "option to repurchase" said shares; and (3) that the capital gain which petitioner realized from said final liquidation should be treated as short-term (rather than as long-term) capital gain. One of the results of such adjustments was that petitioner was given the benefit of a basis of $45,000 for his shares, which was larger than the basis that he had claimed on his return, and which also was larger than the basis to which he otherwise would have been entitled. Petitioner did not legally contest any of the adjustments so made in said prior notice of deficiency; and the normal period of limitations within which to contest the same expired in 1957.

Respondent's determinations in his later notice of deficiency here involved, are wholly consistent with the determinations made in his said prior notice of deficiency; and his determinations in the instant case are fully supported by the evidence here before us. Such evidence establishes that, under date of May 18, 1951, petitioner purported to and did sell and transfer to Carl D. Hulsey for $30,000 cash received, the entire stock of Realty Corporation. This sale was made pursuant to an expressed written agreement which provided: "That upon payment of said sum the entire stock of The Virginia Realty Company will be transferred to and be the property of Carl D. Hulsey." In connection with said transfer, Hulsey gave petitioner "an option to repurchase all of said stock for the sum of $45,000.00, said option to be exercised more than six months from date and within the present calendar year"; and the parties then orally agreed (as

is shown by the letter of June 1, 1951) that appropriate notations to show that such option was outstanding, would be made both on the certificates for the shares transferred, and also on the books of the corporation. Thereafter, petitioner acted in the capacity of an "optionee," in refusing to sell his option to Hulsey, and also in attempting to find persons which might purchase either the shares or the corporate assets, in the event he exercised his option. And then, under date of December 18, 1951, he did exercise said option, and thereby reacquired the stock at the agreed price of $45,000. The period during which he held such reacquired stock before surrendering the same to the corporation in the final liquidation thereof, was less than 6 months.

There is no evidence whatever that petitioner in any way promised or otherwise obligated himself to repay the $30,000 to Hulsey, at any time. The written instruments which petitioner and Hulsey employed to evidence their agreements are not ambiguous. And, since both of said parties were experienced realtors, and since they had previously acted together in handling a large mortgage loan transaction, it is reasonable to assume that they were aware of the differences between "loans," "options," and "transfers of property rights"; and also that they intended the instruments which they employed to have the meanings and legal effects which would normally be attributed to the terms thereof. We find no justification for either disregarding the parties' expressed agreements, or for failing to give full effect thereto.

Based on our examination and weighing of all the pertinent evidence, we hold that petitioners have failed to establish error in the respondent's determinations as to this second issue; and we sustain said determinations. We further hold that the additional capital gain here involved should be treated as *short-term* capital gain of petitioner for the taxable year 1951. The amount of the deficiency determined by respondent herein is approved.

*Decision will be entered for the respondent.*

